JUSTICE TRIEWEILER
dissenting.
I dissent from the majority opinion.
The majority has once again usurped the function of the jury to resolve the legitimate factual issues presented by the evidence in this case.
Only when there are no issues of material fact and the moving party is entitled to judgment as a matter of law is summaryjudgment *393 pursuant to Rule 56(c), M.R.Civ.R, appropriate. Reaves v. Reinhold (1980), 189 Mont. 284, 287, 615 P.2d 896, 898.
In concluding whether there are issues of material fact, the role of the district court and this Court requires more than simply construing the testimony of the moving party in the maimer most favorable to that party. All reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party opposing the summary judgment. Reaves, 615 P.2d at 898.
Furthermore, we have, for good reason, held that ordinarily issues of negligence are questions of fact not susceptible to summary adjudication. Duchesneau v. Silver Bow County (1971), 158 Mont. 369, 377, 492 P.2d 926, 931. This case is a classic example of why issues of negligence are not normally susceptible to summary judgment.
Before discussing the facts, and inferences from those facts which give rise to issues of fact, it is necessary to discuss the rules of law which pertain to the defendants’ conduct.
Both defendants, Shirley Murdock and Robert Lynds, are excused from their collision with a 600 to 900 pound moose based on the majority’s acceptance of their disclaimer that they did not observe it until it was too late to avoid it. However, their protest is of little assistance to them under Montana law. As noted by the majority, we held in Payne v. Sorenson (1979), 183 Mont. 323, 326, 599 P.2d 362, 364, that:
Under Montana law, a motorist has a duty to look not only straight ahead but laterally as well and to see that which is in plain sight. Furthermore, a motorist is presumed to see that which he could see by looking, and he will not be permitted to escape the penalty of his negligence by saying that he did not see that which was in plain view.
Montana’s laws pertaining to motor vehicle equipment require that any vehicle being operated on Montana’s highways between sunset and sunrise must be equipped with headlamps which on high beam are capable of illuminating objects at a distance of350 feet, and on low beam are capable of illuminating objects at a distance of 100 feet. Section 61-9-220, MCA. Unless approaching or following another vehicle, use of the higher beam is required. Section 61-9-221(2), MCA.
In other words, it makes no difference that defendant Murdock claims not to have seen a 600 to 900 pound moose lying in the middle of the highway until she was two car lengths away, and it makes no difference that defendant Lynds failed to see the same moose until it was located in his lane of travel at a distance of 5 to 8 feet away. Both *394 parties are presumed to have seen that which could have been seen had they been reasonably diligent and, if their vehicles were equipped as required by law with the proper headlamps which were being used as required by law, they should have seen the object with which they collided in this case at a distance of at least 350 feet away.
Lynds testified that he was operating a recreational vehicle at a speed of 50 to 55 m.p.h. and proceeding in a southerly direction on Highway 93 just north of Darby. It was dark out, but there was little traffic and the road was straight and dry. He testified that he did not have his headlamps on high beam, but was not following another vehicle and does not recall that any vehicle was approaching him.
Contrary to the representation in the majority opinion, he did not testify that the moose with which he collided entered the highway 5 to 8 feet in front of him. He testified that when he first observed the moose it was already in his lane of travel and 5 to 8 feet away.
He acknowledged that from the high seating position in the RV that he was driving he had a good field of vision. Yet, in spite of that field of vision and the 350 feet at which his headlamps should have illuminated the roadway and the adjoining areas, he had no idea where the moose came from until it was 5 to 8 feet in front of him. In fact, he never did apply his brakes.
Only one of two situations could have occurred prior to Lynds’ collision with the moose. Either the moose was in his lane of travel all along and he should have been aware of its presence at a distance of 350 feet away and been able to make some effort to avoid it, or it approached the highway from an area he was obligated to observe but which he evidently did not observe. In either event, he failed to comply with his obligation under Montana law, as set forth in our Payne decision, to observe the roadway ahead of him and see that which was in plain view.
Furthermore, when Lynds stopped his vehicle 300 to 600 feet ahead of where his collision occurred, he had an obligation to do what he could to warn approaching motorists of the hazard he had created. He states in his testimony that he did so by activating the flashing warning signals on his vehicle. However, Murdock, who struck the same moose shortly after Lynds’ collision, stated that even though the motor home was parked on the highway prior to her collision, she did not see it because there were no flashing lights. She testified that if she had seen flashing lights she would have slowed her vehicle.
For similar reasons, there were issues of fact regarding Murdock’s negligence. She testified that as she left the home where she and *395 Edith White had been visiting, she doesn’t recall whether her headlights were on high or low beam, but acknowledged that she saw no oncoming traffic, and therefore, there was no reason not to have them on high beam.
From the time she turned onto the highway until she collided with the moose, she had not accelerated to more than 25 or 30 miles an hour. When she first saw the moose, it was straddling the center lane of the highway and blocking about half of her lane of travel. However, she testified that she did not see the moose until she was nearly two car lengths away. The highway was newly paved and had wide shoulders and there was ample room for her to avoid the moose. However, she swerved too late to completely avoid it, and as a result, rolled her vehicle. Obviously, the moose did not jump out in front of her, it was lying prone on the highway. Had her headlights been on high beam, she should have been able to see it for a distance of 350 feet. However, even on low beam, had she been keeping the lookout required by law, she should have seen it a distance of 100 feet away, not two car lengths, or approximately 20 feet away, as she testified.
This testimony raises several issues of fact that should have been decided by a jury. (1) Were Lynds or Murdock keeping a proper lookout as required by law? (2) Had they been keeping a proper lookout, at what point should they have observed the hazard ahead of them on the roadway? (3) Finally, when Lynds and Murdock did observe a hazard ahead of them on the roadway, did they act reasonably or negligently in response to that hazard?
The majority opinion never reaches these issues because it turns the rules of summary judgment upside down. It takes the testimony of the parties moving for summary judgment and construes it in the manner most favorable to them. The majority also completely ignores all necessary inferences from the testimony given by defendants. The majority simply disposes of these issues by concluding that under Payne there is only a presumption of negligence when the object struck is in plain view, and that there is no evidence that the moose was in plain view in this case. That conclusion defies logic. If both defendants’ headlights were operating as required by law, and if the moose was located where they first described it, why wasn’t it in plain view earlier than when they first observed it? It is simply impossible that it was not.
The majority inappropriately refers to the fact that defendants were not ticketed. However, that observation is neither correct nor relevant. Lynds was ticketed because three passengers in his RV did *396 not have seatbelts on. Perhaps that explains his reluctance to apply his brakes before colliding with the moose. However, whether he was or was not ticketed for any violation is irrelevant to whether or not he was negligent.
The majority also relies on the highway patrol officer’s testimony that Lynds could not have avoided hitting the moose under the circumstances of this case. However, that testimony was incompetent for the purposes for which it was offered or accepted by the majority. The patrolman was not at the scene of the accident and did not observe its maimer of occurrence. He did not know where the moose came from before appearing in Lynds’ lane of travel and acknowledged that depending on its route to where it was struck, Lynds might have been able to observe the animal substantially in advance of his collision with it.
I also dissent from the majority’s conclusion that the District Court correctly dismissed Donald and Edith White’s claim against the State of Montana by summary judgment. This part of the majority opinion is incorrect for two reasons.
First, the majority discusses whether the State breached a duty of due care by its failure to erect a warning sign in advance of the area where this accident occurred. Contrary to the representations of the majority opinion, there was ample evidence that the State had such a duty. Based on prior vehicle collisions with moose in this area, the Highway Department had determined that a hazard existed as early as 1987, and had first erected warning signs at that time. Even though a slough which was one of the attractions for moose in the area had been eliminated by road reconstruction in 1991, the Highway Department contract for that construction required that the contractor re-erect the signs as part of the highway project. The fact that the signs were stolen did not relieve the Highway Department of the duty to maintain its highway by putting them back up again. Section 61-8-203, MCA, requires that the State warn motorists of known hazards. Darrell Daw, the Field Maintenance Supervisor for the Highway Department in the area where the accident occurred, testified that frequent moose crossings were a known hazard, even after reconstruction of this stretch of highway.
Most importantly, however, the District Court did not decide, and the State on appeal does not argue, that it had no duty to erect warning signs. The District Court concluded, based simply upon Lynds’ and Murdock’s testimony that they would not have slowed down because of warning signs, that there was no causal relationship *397 between the State’s failure to erect the signs and the collisions which resulted in Edith White’s injuries. However, the opinions of the District Court and the majority of this Court ignore significant other testimony given by both defendants. For example, Lynds testified that when he sees deer crossing signs it makes him more alert and he is more inclined to watch what is happening on the road ahead of him. "When asked if he would have driven any differently had he seen signs warning him that moose crossed the highway in the area where this collision occurred, he testified: “I probably would have driven a little bit more defensively, yes, but it wasn’t there.” He also testified that if he had known there was a possibility of moose crossing in the area, and if there had not been a car coming toward him, his headlights would have been on high beam at the time of the accident, rather than low beam.
This testimony, when considered in combination with the legal requirements for headlamps on vehicles, the broad range of vision available in the recreational vehicle, and the broad range of illumination that would have occurred from high beam, are direct evidence that the collision which led directly to Edith White’s injuries could have been avoided had an appropriate warning been given to Lynds.
Likewise, Murdock testified that if she had seen moose warning signs that evening they would definitely have made an impression on her and she would have been more alert for the hazards that moose present. Perhaps in her case, because of the low speed at which she was already traveling, she would not have been going any slower because of warning signs. However, had Lynds been adequately warned there would not, in all likelihood, have been a dead moose on the highway for Murdock to collide -with.
None of these facts are referred to in the District Court opinion or the majority’s opinion. Considering these facts it is impossible to conclude that there are not at least inferences from the testimony which create factual issues regarding the subject of causation.
Under our laws pertaining to the respective responsibilities of courts and juries, the majority has no business substituting its judgment regarding the merits of plaintiffs’ claim for that of the jury. However, that is what they have done in this case. For these reasons, I dissent from the majority opinion.
JUSTICE HUNT joins in the foregoing dissent.